UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
BESS I. CAPLAN,

      Plaintiff,

   -against-

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

      Defendant.
-------------------------------------------------------------x

**MEMORANDUM AND ORDER**
05-CV-3695 (DLI) (JMA)

**DORA L. IRIZARRY, United States District Judge:**

 Plaintiff Bess I. Caplan filed an application for disability insurance benefits ("DIB") under the Social Security Act (the "Act") on April 13, 1999. Plaintiff's application was denied initially and on reconsideration. Plaintiff appeared with her attorney and testified at a hearing held before an Administrative Law Judge ("ALJ") on September 13, 2000. By a decision dated January 25, 2001, the ALJ partially found in plaintiff's favor. The ALJ concluded that plaintiff was disabled within the meaning of the Act as of September 25, 2000, but not prior to that date. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review. Plaintiff filed the instant action seeking judicial review of the denial of benefits for the period December 31, 1997 to September 25, 2000, pursuant to 42 U.S.C. § 405(g). The Commissioner now moves for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, seeking affirmation of the denial of benefits prior to September 25, 2000, which plaintiff opposes. For the reasons set forth more fully below, the Commissioner's motion is denied and the case is remanded.

---

 [1] Pursuant to Fed. R. Civ. P. 25(d), Michael J. Astrue shall be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this action.

# BACKGROUND

A.   **Non-medical and Testimonial Evidence**

Plaintiff appeared with counsel and testified before ALJ Eileen P. Burlison at a hearing held on September 13, 2000. (Admin. R. at 273.) Plaintiff testified that she began working as a secretary in 1982 and that her duties consisted of scheduling, running errands, and taking shorthand. (Admin. R. at 276.) In terms of physical exertion, her position required walking and sitting. (Admin. R. at 294.) She ceased working in July 1997, due to fibromyalgia, irritable bowel syndrome, and panic attacks. (Admin. R. at 282-83.) In her final year of work, her absences totaled approximately four months. (Admin. R. at 283.) Plaintiff received her salary through December 31, 1997. She alleges that she became disabled at that time. (Admin. R. at 273, 276.) She attempted to find work unsuccessfully in 1998. (Admin. R. at 292.)

Plaintiff first saw a therapist for psychiatric problems in the 1970s. (Admin. R. at 284.) Plaintiff indicated that at the time of the hearing, she took a variety of medications, including Prozac, Klonopin, Synthroid, Imodium, and Excedrin. (Admin. R. at 288.) Plaintiff testified that she could sit for fifteen minutes at a time before needing to change positions. (Admin. R. at 292.) She could stand for short periods and could walk four blocks at most. (Admin. R. at 292-93.) Plaintiff naps several times daily. (Admin. R. at 293.) Plaintiff lives with her brother in an apartment and performs household chores. (Admin R. at 278-79.)

B.   **Medical and Psychiatric Evidence Submitted Prior to the ALJ Hearing**

1.   **Medical Evidence**

In January 1997, Plaintiff began treating at Brooklyn Women's Services and Dr. Ana Hansen was her primary care physician. (Admin. R. at 93, 234-36.) Dr. Hansen diagnosed her with

hypothyroidism, chronic sinusitis, fibromylagia, irritable bowel syndrome, degenerative joint disease with back pain, and hay fever. (Admin. R. at 207-17.) Dr. Hansen prescribed Synthroid, Prozac, Klonopin, Librax, Vancenase, Duratuss, Naprosyn, and Cytotec. (*Id*.)

In January 1998, Dr. Kersti Bruining, a neurologist, diagnosed plaintiff with localized elbow pain. (Admin. R. at 178-80.) Plaintiff brought copies of her prior MRI and EMG reports to a follow-up visit. (Admin. R. at 179.) Her nerve conduction and EMG test results were normal; however, her MRI indicated small disc herniations of the cervical spine, and degenerative joint disease with mild left foraminal stenosis. (*Id*.)

Dr. David Goddard examined plaintiff on April 7, 1998, noting that Plaintiff stated that she was diagnosed with rheumatoid arthritis roughly thirty years ago and had received treatment, including the use of steroids. (Admin. R. at 174.) Plaintiff also indicated that she had a discectomy for her low back pain and received treatment for her right elbow. (*Id*.) Dr. Goddard described plaintiff's examination as "unremarkable." (*Id*.) Dr. Goddard's examination revealed evidence of paracervical and lumbar tenderness, bilateral epicondylitis, bilateral anserine bursitis, and generalized mild osteoarthritis. (*Id*.) Dr. Goddard diagnosed plaintiff with polyarticular osteoarthritis and secondary fibromyalia. (*Id*.) On April 29, 1998, plaintiff returned to Dr. Goddard, who noted that the bone density measurements of her left and right hips were consistent with early bone mineral loss and recommended that she take a daily calcium supplement and vitamin D. (Admin. R. at 76.) In a subsequent visit, on June 29, 1999, Dr. Goddard diagnosed her with polyarticular osteoarthritis and secondary fibromyalgia. (Admin. R. at 75.) He noted that the "combination of these two conditions results in difficulty with bending, stooping, lifting, and carrying" and determined that plaintiff was unable to work. (*Id*.) He opined that her "disability is likely to continue indefinitely." (*Id*.)

3

Plaintiff visited Dr. Donald Huml, her chiropractor, on July 12, 1999. The report indicates that plaintiff began treating with him approximately five years earlier for lumbar plexion disorder, carpal tunnel syndrome, and headaches. (Admin. R. at 84.) Plaintiff's complaints included headaches, tempero-mandibular joint ("TMJ") pain, other unspecified joint pain, low back pain with paresthesias in both legs, and difficulty breathing when walking and climbing stairs. (*Id*.) Plaintiff also complained of symptoms consistent with thyroid disease, irritable bowel syndrome, and chronic fatigue. (Admin. R. at 85.) Dr. Huml concluded that plaintiff could lift and carry up to three pounds, stand and walk for less than two hours a day and sit for less than six hours a day. (Admin. R. at 87.)

Plaintiff began seeing Dr. Shefali Patel, another physician at Brooklyn Women's Services, as her primary care physician in February 1999. (Admin. R. at 93-96.) In a report from July 1999, Dr. Patel noted unspecified limitations on lifting and carrying. (Admin. R. at 95.) She noted that plaintiff could stand and walk for up to six hours a day and sit without limitations. (Admin. R. at 95-96.) In October and November 1999, plaintiff underwent a series of diagnostic tests. A pulmonary function test revealed shortness of breath. (Admin. R. at 136.) A CT scan found no abnormalities in the visualized trachea, and Plaintiff tested negative for ischemia. (Admin. R. at 133.)

### 2. Psychiatric Evidence

On February 1, 1999, plaintiff began treating for depression and anxiety with Dr. Lillian Boone.[2] (Admin. R. at 163-65.) Plaintiff denied any previous psychiatric hospitalization or suicidal thoughts. (*Id*.) Dr. Boone noted that plaintiff appeared exhausted and depleted and diagnosed her with depressive disorder and generalized anxiety disorder. (Admin. R. at 163, 165.) Plaintiff

---

[2] Previously, Plaintiff treated with Dr. Leslie Fine; however, Plaintiff ceased therapy with Dr. Fine due to a problem with her insurance coverage. (Admin. R. at 163.)

continued her treatment with Dr. Boone, who prescribed Celexa and Klonopin. (Admin. R. at 160.) Dr. Boone modified plaintiff's medications in April 1999, directing plaintiff to discontinue Celexa and to take Buspar, Prozac, and Klonopin. (*Id*.) In June 1999, plaintiff indicated that she suffered from panic attacks and Dr. Boone directed her to discontinue Buspar and to increase Prozac. (*Id*.) On August 2, 1999, Plaintiff complained of financial problems and indicated that she was experiencing difficulty with obtaining disability benefits. (Admin. R. at 152.) Dr. Boone decreased plaintiff's Klonopin dosage and prescribed Prozac. (*Id*.) On September 13, 1999, plaintiff visited Dr. Boone complaining of irritability and anxiety. (Admin. R. at 146.) In November and December 1999, plaintiff again expressed concerns regarding her finances. (Admin. R. at 129, 131.)

On January 26, 2000, Cecile Kotkin, plaintiff's social worker, completed a report summarizing her sessions with plaintiff. (Admin. R. at 71.) Ms. Kotkin reported that plaintiff was unable to get out of bed early and that plaintiff was "beset by ruminative and racing thoughts with regard to her finances and her inability to work." (*Id*.) She noted that Plaintiff's low self-esteem led to a cycle of depression and anxiety and that Plaintiff "periodically suffers from panic attacks when faced with stressful situations." (*Id*.) Ms. Kotkin described plaintiff's anxiety and depression as being "at her limit." (*Id*.)

### C. Medical and Psychiatric Evidence Submitted Post-Hearing

The ALJ received several reports after the hearing. Ms. Kotkin completed a psychiatric functional capacity evaluation on September 19, 2000. (Admin. R. at 266-67.) She reported that plaintiff had severely restricted activities of daily living, constriction of interests, and a severe impairment in ability to respond to customary work pressures. (*Id*.) Plaintiff showed a moderately severe impairment in her ability to relate to others and to respond appropriately to supervisors and

5

coworkers. (*Id.*) Ms. Kotkin concluded that these limitations began in January 1997. (*Id.*)

On September 25, 2000, Dr. Patel completed a treating physician's medical report and functional capacity evaluation. (Admin. R. at 264-65.) Dr. Patel diagnosed plaintiff with fibromyalgia, cervical spondylosis, hypothyroidism, and depression. (*Id.*) Dr. Patel indicated that plaintiff suffered from chronic musculoskeletal pain in different parts of her body. (*Id.*) Plaintiff took medication for her hypothyroidism and depression. (*Id.*) Dr. Patel indicated that plaintiff's prognosis was deteriorating. (Admin. R. at 263.) She concluded that plaintiff could sit for less than six hours total in a day, and stand and walk for less than six hours in a day. (Admin. R. at 265.) Additionally, plaintiff could carry or lift no more than three to four pounds at a time, and could not sit, stand or walk for more than forty-five minutes continuously. (Admin. R. at 263, 265.)

On October 9, 2000, Dr. Boone completed a treating physician's medical report and psychiatric functional capacity evaluation. (Admin. R. at 268-70.) Dr. Boone reported that plaintiff had generalized anxiety disorder and depressive disorder. (*Id.*) Dr. Boone concluded that plaintiff was "unable to be gainfully employed because of severe and persistent mental illness." (*Id.*) Dr. Boone rated plaintiff's ability to relate to others as moderately severe, her restriction of daily activities and constriction of interests as severe, and her ability to respond appropriately to supervision and to coworkers as moderately severe. (Admin. R. at 269-70.) Dr. Boone noted that plaintiff had a severe impairment in her ability to respond to customary work pressures. (Admin. R. at 270.) Dr. Boone concluded that these restrictions have been present since January 1997. (*Id.*)

**D.     Consults**

On July 27, 1999, Dr. Harvey Barash, a consultative psychiatrist, conducted a mental status examination. (Admin. R. at 91-92.) He noted that plaintiff's affect was sad, her mood depressive,

her thought processes coherent, her comprehension adequate, and her memory and concentration fair. (Admin. R. at 91.) He diagnosed her with anxiety disorder with panic and depressive features, noting that she needed psychiatric treatment. Her adaptability was limited as she had a reduced tolerance for stress. (Admin. R. at 92.)

Plaintiff attended a consultative exam on August 3, 1999, with Dr. Myron Seidman. (Admin. R. 97-100.) Plaintiff reported having pain and swelling of her feet. (Admin. R. at 97.) Plaintiff also complained of pain and stiffness of the right hip and both shoulders, stiffness of the neck, and pain in the lower lumbar spine radiating out laterally. (*Id*.) X-rays of the plaintiff's lumbosacral spine revealed severe chronic intervertebral disc degeneration as well as facet osteoarthritis. (Admin. R. at 99, 102.) Dr. Seidman concluded that plaintiff had a moderate limitation in lifting, carrying, standing, and walking, a severe limitation in pushing and pulling right foot controls, and no limitation in standing, sitting, or pushing and pulling with left foot or arm controls. (Admin. R. at 99.)

On November 22, 1999, Dr. J. Bueche, a consultative physician, conducted a residual functional capacity ("RFC") assessment of plaintiff. (Admin. R. at 121-28.) Dr. Beuche found that plaintiff could occasionally lift or carry ten pounds, frequently lift or carry less than ten pounds, stand or walk at least two hours in an eight-hour work day, sit six hours in an eight-hour work day, and had unlimited ability to push or pull. (Admin. R. at 122.) Dr. Beuche found plaintiff's complaints of pain partially credible, and concluded that plaintiff could perform sedentary work. (Admin. R. at 126-27.)

On February 10, 2000, Dr. Lee Mescon, a consultative physician, examined plaintiff. (Admin. R. at 239-41.) He indicated that plaintiff's gait and station were normal and that she could get on and off the examination table and dress and undress without assistance. (Admin. R. at 240.) She had full range of motion in her upper and lower extremities. (Admin. R. at 241.) Dr. Mescon concluded that

there were no objective findings demonstrating that plaintiff would be unable to sit, stand, climb, push, pull or carry heavy objects. (*Id*.)

On that same day, Dr. Herbert Meadow, a consultative psychiatrist, conducted a mental status examination of plaintiff. (Admin. R. 237-38.) She did not exhibit any psychomotor pathology. (Admin. R. at 237.) Her speech was logical and coherent and she presented no signs of thought disorder or auditory or visual hallucinations or delusions. (*Id*.) Dr. Meadow diagnosed her with mild to moderate dysthymia and concluded that this diagnosis "would not necessarily interfere with her ability to function." (Admin. R. at 237-38.)

On March 3, 2000, Dr. Drucker, a state agency physician, reviewed plaintiff's psychiatric evidence. (Admin. R. at 246-53.) Dr. Drucker concluded that plaintiff had an affective disorder, but showed only a slight restriction in daily activities, a slight difficulty in maintaining social functioning, and slight deficiencies in concentration, persistence, and pace. (*Id*.) He noted that plaintiff would have a disturbance of mood, accompanied by a full or partial manic or depressive syndrome, which was evident by plaintiff's dysthmia. (Admin. R. at 249.)

On March 6, 2000, Dr. C. Montorfano, a state agency physician, reviewed plaintiff's medical evidence. (Admin. R. at 255-62.) He opined that plaintiff was able to lift or carry up to twenty pounds occasionally and ten pounds frequently. (Admin. R. at 256.) He also concluded that plaintiff could stand, walk, and sit for six hours in a eight-hour day. (*Id*.)

## DISCUSSION

### A.   Standard of Review

Unsuccessful claimants for disability benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of their benefits "within sixty

days after the mailing . . . of notice of such decision or within such further time as the Commissioner of Social Security may allow." 42 U.S.C. § 405(g). A district court, reviewing the final determination of the Commissioner, must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998). The former determination requires the court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act." *Echevarria v. Sec'y of Health & Human Servs.,* 685 F.2d 751, 755 (2d Cir. 1982) (internal quotations omitted). The latter determination requires the court to ask whether the decision is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

The district court is empowered "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A remand by the court for further proceedings is appropriate when "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). A remand to the Commissioner is also appropriate "[w]here there are gaps in the administrative record." *Rosa v. Callahan*, 168 F.3d 72, 83 (2d Cir. 1999) (quoting *Sobolewski v. Apfel*, 985 F. Supp. 300, 314 (E.D.N.Y. 1997)). ALJs, unlike judges, have a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of the benefits proceedings." *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999).

**B.    Disability Claims**

To receive disability benefits, claimants must be "disabled" within the meaning of the Act. *See* 42 U.S.C. § 423(a), (d). Claimants establish disability status by demonstrating an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months. *Id.* § 423(d)(1)(A). The claimant bears the initial burden of proof on disability status and is required to demonstrate disability status by presenting "medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques," as well as any other evidence the Commissioner may require. 42 U.S.C. § 423(d)(5)(A); *see also Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).

ALJs must adhere to a five-step inquiry to determine whether a claimant is disabled under the Social Security Act as set forth in 20 C.F.R. § 404.1520. If at any step, the ALJ finds that the claimant is either disabled or not disabled, the inquiry ends there. First, the claimant is not disabled if he or she is working and performing "substantial gainful activity." 20 C.F.R. § 404.1520(b). Second, the ALJ considers whether the claimant has a "severe impairment" without reference to age, education or work experience. Impairments are "severe" when they significantly limit a claimant's physical or mental "ability to conduct basic work activities." 20 C.F.R. § 404.1520(c). Third, the ALJ will find the claimant disabled if his or her impairment meets or equals an impairment listed in Appendix 1.[3]  *See* 20 C.F.R. § 404.1520(d).

If the claimant does not have a listed impairment, the ALJ makes a finding on the claimant's "residual functional capacity" in steps four and five. 20 C.F.R. § 404.1520(e). In the fourth step, the

---

[3]    20 C.F.R. pt. 404, subpt. P, app. 1.

claimant is not disabled if he or she is able to perform "past relevant work." 20 C.F.R. § 404.1520(e). Finally, in the fifth step, the ALJ determines whether the claimant could adjust to other work existing in the national economy, considering factors such as age, education, and work experience. If so, the claimant is not disabled. 20 C.F.R. § 404.1520(f). At this fifth step, the burden shifts to the Commissioner to demonstrate that the claimant could perform other work. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002) (citing *Carroll*, 705 F.2d at 642).

**C.     ALJ's Decision**

The ALJ applied the five-step analysis set forth in 20 C.F.R. § 404.1520. The ALJ resolved the first step in plaintiff's favor, finding that she had not engaged in substantial gainful activity since December 31, 1997, her alleged onset of disability date. (Admin. R. at 17.) The ALJ resolved the second step in plaintiff's favor, finding that plaintiff's fibromyalgia and anxiety disorder constituted "severe impairments" within the meaning of the Act; however, the ALJ resolved the third step against plaintiff, noting that neither of these impairments met or equaled the listed impairments set forth in Appendix 1, Subpart P, Regulation No. 4. (Admin. R. at 14.) The ALJ then analyzed plaintiff's RFC, taking into consideration her symptoms, allegations of pain, and medical evidence. The ALJ found that the medical evidence did not support a finding that she was unable to perform her past relevant work as a secretary prior to September 25, 2000. (*Id*.) Further, the ALJ did not find her allegations of pain and limitations entirely credible, noting that her allegations varied between doctor to doctor and that she did not file for disability benefits until almost a year and a half after her alleged onset of disability. (Admin. R. at 14, 17.) The ALJ relied on the opinions of agency consulting physicians, finding that she retained the RFC to perform sedentary work until September 25, 2000, at which time she became disabled within the meaning of the Act. The ALJ resolved the fifth step against plaintiff

for the period prior to September 25, 2000, finding that plaintiff's past relevant work as a secretary was not precluded by her RFC to perform sedentary work for the period December 31, 1997 to September 25, 2000.

**D.     Application**

The Commissioner seeks judgment on the pleadings, contending that the ALJ properly found that plaintiff was not disabled for the period December 31, 1997 to September 25, 2000. Plaintiff opposes the instant motion, contending that the ALJ (i) improperly weighted the opinions of treating physicians and (ii) failed to develop the record.

A treating physician's opinion on the "nature and severity" of an impairment must be given controlling weight when "supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in [the] record . . . ." *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993) (citing 20 C.F.R. 404.1527(d)). If an ALJ determines that a treating physician's opinion should not be given controlling weight, the proper weight accorded depends upon several factors: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Clark v. Comm'r of Social Security*, 143 F.3d 115, 118 (2d Cir. 1998) (citing 20 C.F.R. § 404.1527(d)). ALJs must "give good reasons" as to the weight accorded to a treating physician's opinion. *Id*.

In the instant action, the ALJ relied upon reports from the consultative exams conducted by Drs. Meadow and Mescon, as well as file reviews conducted by Drs. Montorfano and Drucker to conclude that plaintiff was not disabled prior to September 25, 2000. (Admin. R. at 16.) The ALJ acknowledged that Dr. Goddard, a treating physician, indicated that plaintiff was unable to work due

to her physical impairments in a report dated June 29, 1999 (Admin. R. at 15); however, the ALJ did not indicate why he gave no weight to this opinion of a treating physician. The ALJ's failure to provide an explanation for assigning no weight to Dr. Goddard's report merits remand. *See Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 2003) ("Failure to provide 'good reason' for not crediting the opinion of a claimant's treating physician is a ground for remand.").

Moreover, plaintiff's treating psychiatrist, Dr. Boone, submitted a post-hearing report indicating that plaintiff was disabled due to her psychiatric impairments and that she had been disabled since January 1997. (Admin. R. at 268-270.) Plaintiff's social worker, Ms. Kotkin, submitted a report with similar findings. (Admin R. at 266-67.) The ALJ relied on these reports, as well as a post-hearing report from Dr. Patel, to conclude that plaintiff was disabled as of September 25, 2000. It appears that the ALJ gave no weight to the retrospective opinions of Dr. Boone and Ms. Kotkin with respect to plaintiff's psychiatric disability. The ALJ's failure to explain why she assigned no weight to these opinions merits remand. "It is well-settled that the "treating physician rule" applies to retrospective diagnoses, relating to some prior time period during which the diagnosing physician may or may not have been a treating source." *Cava v. Barnhart*, 03-CV-6621 (DC), 2004 WL 1207900, *9 (S.D.N.Y. Jun. 1, 2004) (citing *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003)). The ALJ briefly noted that Dr. Boone's conclusions were not supported with "findings of a mental status examination." (Admin. R. at 17.) This comment does not justify the assignment of no weight to Dr. Boone's retrospective opinion. The non-adversarial nature of administrative hearings means that ALJs must affirmatively develop the record. ALJs must make "every reasonable effort" to help obtain the necessary medical reports. 20 C.F.R. § 404.1512(d). If the evidence received is insufficient, ALJs must contact medical sources for additional information. 20 C.F.R. § 404.1512(e).

This duty exists whether or not Plaintiff is represented. *See Perez v. Chater*, 77 F.3d 41, 47 (2d. Cir. 1996). Thus, to the extent the ALJ intended to discredit Dr. Boone's conclusions based on the sufficiency of the evidence, the ALJ had a duty to pursue whether DR. Boone, indeed, had sufficient evidence to support her conclusions. There is nothing in the record to indicate that the ALJ made any efforts to obtain such information from Dr. Boone. The ALJ failed to discharge this duty.

## CONCLUSION

For the reasons set forth above, the Commissioner's motion for judgment on the pleadings is denied and this action is remanded for further proceedings consistent with this Order. The Commissioner shall take all steps necessary to prevent any under delay in the processing of plaintiff's case, and in conducting further proceedings before the ALJ. *See Butts v. Barnhart*, 388 F.3d 377, 387 (2d Cir. 2004).

SO ORDERED

DATED:     Brooklyn, New York
               March 15, 2009

_____/s/_____
DORA L. IRIZARRY
United States District Judge